CUDAHY, Circuit Judge.
 

 Appellants Reuben H. Donnelley Corporation (“Donnelley”) and Sandra C. Tinsley, Inc. (“Tinsley”) filed a claim for administrative priority against appellee Jartran, Inc.’s (“Jartran”) estate. The bankruptcy judge denied the claim and, on appeal, the district court affirmed. Our appellate jurisdiction was properly invoked under 28 U.S.C. § 1293(b) and, for the reasons set forth below, we affirm.
 

 I.
 

 The facts are undisputed and can be stated briefly. Jartran is in the business of leasing trucks to consumers nationwide. Pursuant to an agreement dated September 11, 1979 (the “Agreement”), Tinsley, an advertising agency, placed Jartran’s orders for classified advertisements in telephone directories (the “Yellow Pages”) with Don-nelley. Donnelley, in turn, arranged with the Yellow Pages’ publishers nationwide for Jartran’s ads to appear. Under the Agreement, Tinsley and Jartran were liable to Donnelley for the cost of the advertising. Donnelley was liable to the publishers of the various directories. Although the parties were irrevocably committed to pay for the advertising several months before the ads were to appear,
 
 [1]
 
 the Agreement provided that Tinsley and Jartran would be billed for the ads only after they were published.
 

 On December 31, 1981, Jartran filed for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101-1174. At that time, the closing date had passed
 
 *586
 
 for many directories which had not yet been published. Appellants claim that the amount owing for ads placed in such directories, $1,311,695.50, should be treated as an administrative expense.
 
 [2]
 
 As is apparent from our discussion of the law relating to the allowance of administrative expenses, the key fact is that the irrevocable commitment by Jartran, Donnelley and Tinsley to place the ads was made before the filing of the petition in bankruptcy.
 

 II.
 

 Section 503 of the Bankruptcy Code provides as follows:
 

 § 503
 

 (b) After notice and a hearing, there shall be allowed, administrative expenses ... including—
 

 (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case[.]
 

 It is well settled that expenses incurred by the debtor-in-possession in attempting to rehabilitate the business during reorganization are within the ambit of § 503.
 
 See Reading Co. v. Brown,
 
 391 U.S. 471, 475, 88 S.Ct. 1759, 1761, 20 L.Ed.2d 751 (1968) (construing predecessor to § 503). Appellants claim that, because the ads involved in the case were not published until after the “commencement of the case” and presumably aid Jartran in its efforts to rejuvenate its business, the cost of those ads should be treated as an administrative expense. As an administrative expense, the fees for the ads would be afforded priority ahead of certain pre-petition creditors.
 

 The policies underlying the provisions of § 503 (and its predecessor, § 64(a)(1) of the Bankruptcy Act, 11 U.S.C. § 104(a)(1) (1976)) are not hard to discern. If a reorganization is to succeed, creditors asked to extend credit after the petition is filed must be given priority so they will be moved to furnish the necessary credit to enable the bankrupt to function.
 
 See In re Mammoth Mart, Inc.,
 
 536 F.2d 950, 954 (1st Cir.1976) (Coffin, Chief Judge). Thus, “[w]hen third parties are
 
 induced
 
 to supply goods or services to the debtor-in-possession ... the purposes of [§ 503] plainly require that their claims be afforded priority.”
 
 Id.
 
 (emphasis added; footnote omitted). Without a provision like § 503, efforts to reorganize would be hampered by the necessity of advance payment for all goods and services supplied to the estate since presumably no creditor would willingly assume the status of a non-priority creditor to a debtor undergoing reorganization.
 

 This involves no injustice to the pre-petition creditors because it is for their benefit that reorganization is attempted. If reorganization successfully rehabilitates the debtor, presumably the pre-petition creditors will be better off than in a liquidation.
 
 See Reading Co. v. Brown, supra,
 
 391 U.S. at 478, 88 S.Ct. at 1763. However, because priority should not be afforded unless it is founded on a clear statutory purpose, if the appellants’ claim does not comport with the language and underlying purposes of § 503, their claim must fail.
 
 See In re Chicago, Milwaukee, St. Paul & Pacific Railroad,
 
 658 F.2d 1149, 1163 (7th Cir.1981) (general rule is equality of distribution; deviation must appear in the statute),
 
 cert. denied,
 
 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982). Any preference for claims not intended by Congress to have priority would dilute the value of the intended priority and thus frustrate the intent of Congress.
 
 Id.; In re Mammoth Mart, supra,
 
 536 F.2d at 953.
 

 Recognizing the need for careful criteria in granting priority, the court in
 
 Mammoth Mart
 
 established a two part test for determining whether a debt should be
 
 *587
 
 afforded administrative priority. Under these criteria a claim will be afforded priority under § 503 if the debt both (1) “arise[s] from a transaction with the debtor-in-possession” and (2) is “beneficial to the debtor-in-possession in the operation of the business.”
 
 In re Mammoth Mart, Inc.,
 
 536 F.2d at 954. This test is, of course, essentially an effort to determine whether the underlying statutory purpose will be furthered by granting priority to the claim in question, and we will apply it in that spirit.
 

 There is no question that the appearance of ads in Yellow Page directories throughout the country is beneficial to Jar-tran, as a debtor-in-possession, in the operation of its business. After filing the petition in bankruptcy, Jartran continued to place new ads in directories throughout the nation, thus evidencing the importance of Yellow Pages advertising to the success of the Jartran business. Therefore, the only serious question on appeal is whether the district court incorrectly concluded that the claim did not arise from a transaction with the debtor-in-possession.
 

 Stated this simply, we believe that the district court’s conclusion was correct: the agreement among the parties was entered into, and the ads were placed without possibility of revocation, before the petition was filed. Appellants urge, however, that the publication.
 
 date
 
 rather than the closing date is the key date for § 503 purposes. They argue forcefully that, because the ads were
 
 published
 
 after the petition in bankruptcy was filed, appéllants “supplied [consideration] to the debtor-in-possession in the operation of the business.”
 
 Mammoth Mart, supra,
 
 536 F.2d at 954.
 
 [3]
 
 Appellants support this argument by pointing out that appellants provided additional services after the closing date, and, presumably, after the petition was filed, including “review of advertising copy for correctness, size of advertisement, placement by page and category, accuracy of telephone listings and addresses, review of art work, and response to numerous queries from publishers concerning the advertisements.” Appellants’ brief at 7. It was also necessary for Donnelley and Tinsley (presumably after the filing of the petition) to examine the final, published ads to ascertain their correctness. Then, and only then, would Jar-tran be billed for the advertisements.
 

 We recognize that the services performed by appellants after the closing date, and after the filing of the petition, were significant and of value to Jartran. However, appellants do not allege that Jartran, after the filing of the petition, requested that appellants continue work on ads for which the closing date had passed. Nor is it claimed that Jartran had a duty to take affirmative steps to prevent Donnelley from engaging in post-petition performance. Thus, it was the pre-petition Jartran and not Jartran as debtor-in-possession that
 
 induced
 
 appellants to perform these services. To serve the policy of the priority, inducement of the creditor’s performance
 
 by the debtor-in-possession
 
 is crucial to a claim for administrative priority in the context of the furnishing of goods or services to the debtor.
 
 See In re Mammoth Mart, Inc., supra,
 
 536 F.2d at 954. Because the closing date occurred before the debtor-in-possession came into existence (through the filing of the Chapter 11 petition), the bankruptcy court in the case before us held that the debtor-in-possession did not induce appellants’ performance.
 
 See In re Jartran, Inc.,
 
 33 B.R. 339, 341 (Bkrtcy.N.D.Ill.1982),
 
 aff'd
 
 No. 82 C 7568 (N.D.Ill. June 13, 1982) (adopting order of Bankruptcy Court).
 
 [4]
 

 
 *588
 
 As noted, the reason that
 
 inducement
 
 of the creditor’s performance by the debtor-in-possession is crucial to a claim for administrative priority is rooted in the policies that gave rise to the creation of the priority. Thus, administrative priority is granted to post-petition expenses so that third parties will be moved to provide the goods and services necessary for a successful reorganization.
 
 See In re Mammoth Mart, Inc., supra,
 
 536 F.2d at 954. In the case before us, no inducement by the debtor-in-possession was required because the liability for the costs of the ads was irrevocably incurred before the petition was filed. This construction of the requirements for the administrative priority provides as full an opportunity as can be furnished for rehabilitation of the debtor. And this approach simply carries out the teaching of the Supreme Court, “that fairness requires that any claims incident to the debtor-in-possession’s operation of the business be paid before those for whose benefit the continued operation of the business was allowed.”
 
 Mammoth Mart, supra,
 
 536 F.2d at 954
 
 citing Reading Co. v. Brown,
 
 391 U.S. 471, 478, 88 S.Ct. 1759, 1763, 20 L.Ed.2d 751 (1968) (first priority for tort claims based upon negligence attributable to debtor-in-possession). It is clear, however, that appellants’ claim here arises out of commitments made before the debtor-in-possession came into existence.
 

 Appellants have cited to us no authority for their most important proposition — that “[performance pursuant to a contract which is executory in nature rendered to a Debtor-In-Possession creates an obligation of priority payment in accordance with the provisions of 11 U.S.C. § 503(b)(1)(A) (1978).” Brief for Appellants at 11. We have, however, located authority for this proposition in a line of cases exemplified by
 
 American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,
 
 280 F.2d 119, 124 (2d Cir.1960). That case, and the Second Circuit cases that have followed it,
 
 e.g. In re Unishops, Inc.,
 
 553 F.2d 305, 308 (2d Cir.1977)
 
 [5]
 
 provide the strongest support for appellants’ position that we have found. The Second Circuit cases go so far as to hold that even if the executory contract is rejected, the creditor has an equitable right to priority payment for benefits received by the debtor “during the interval between the filing of the debtor’s petition and the rejection of the contract[.]”
 
 American Anthracite & Bituminous Coal Corp.,
 
 280 F.2d at 124. We find, however, that no such equitable right exists here because the Second Circuit’s reasoning may depend on the debtors’ “electing” to receive benefits under the contract after filing of the petition.
 
 Id.
 
 As noted, appellants have not cited this line of cases as authority and presumably may not believe that it supports their position. They have insisted instead that Jartran “accepted and utilized the advertising.” Reply Brief for Appellants at 11. We are unable, however, to find any act of acceptance (or inducement) that would satisfy the
 
 Mammoth Mart
 
 test and we agree with the First Circuit, that absent such an act, the language and policies of § 503 would not be served by priority here.
 

 Both in the briefs and at oral argument, the parties have proposed several analogies which have proven useful in resolving the issues presented by this appeal. Appellants argue that this case is similar to a situation in which goods are shipped by a creditor prior to the debtor’s filing a peti
 
 *589
 
 tion in bankruptcy but with the goods arriving after the filing. In such a ease, it is argued, if the debtor-in-possession (which came into existence upon filing) accepts the goods, the creditor is entitled to administrative priority as a post-petition creditor. Without quarreling about the correctness of the example, we are not persuaded that it is analogous to the present case. In the example, the act of acceptance by the debt- or-in-possession could be construed as an affirmation of the contract. There might even be an obligation on the part of the debtor to reject the goods if it did not plan to treat the delivery as a post-petition transaction. Jartran, however, performed no act after the filing of the petition that could be construed as an affirmation of the placement of the ads. Jartran could not, once the closing date had passed, withdraw the ads, and no further action on its part was necessary to cause publication. This case is more like a situation in which a creditor has supplied a machine, for example a photocopier, before the filing of the petition in bankruptcy. Questions of secured status aside, the. mere fact that the debtor continued to use the machine after the petition was filed would not entitle a claim for the price of the copier to § 503 priority. Likewise, while Jartran (as the debtor-in-possession) enjoyed the benefits of the published ads, the transaction out of which these benefits arose was completed before the petition was filed and nothing could have been done to further or cancel the transaction after the petition filing. Thus, the matter was outside the scope of § 503.
 

 Appellants cite to us very few cases which directly construe the administrative priority provision. Therefore, a review of the cited, and possibly relevant, case law is not burdensome.
 

 In
 
 Denton & Anderson Co. v. Induction Heating Corp.,
 
 178 F.2d 841 (2d Cir.1949), the Second Circuit held that certain claims for commissions were not entitled to administrative priority. In that case, the claimants served as manufacturer’s representatives and procured orders which were accepted by their principal, the debtor, before the Chapter 11 proceeding commenced. The debtor-manufacturer delivered the goods, and was paid by the customers for them, after the petition was filed. The contract between the claimants (the manufacturer’s representatives) and the debtor-manufacturer provided for payment of a commission to the claimants
 
 after the orders were filled.
 
 The court denied the claim for administrative priority holding that the claim “was not a debt ‘incurred’ after the date of the filing of the arrangement petition.”
 
 Id.,
 
 178 F.2d at 843. Rather, the obligation to pay the commission matured, for priority purposes, at the time the orders were accepted.
 
 Id.
 
 The
 
 Den-ton & Anderson
 
 reasoning is helpful because Jartran’s pre-petition placement of the ads (and failure to withdraw before the pre-petition closing date) is analogous to the pre-petition acceptance of the orders in
 
 Denton & Anderson.
 

 Appellants rely on
 
 In re Knutson,
 
 563 F.2d 916 (8th Cir.1977), for the proposition that, because both they and Jartran had continuing obligations under the Agreement, they are entitled to administrative priority. In
 
 Knutson,
 
 the court held that airline tickets purchased on credit by the debtor were executory contracts.
 
 See
 
 11 U.S.C. § 365. The opinion makes no mention of administrative priority but, presumably, if the debtor had used one of the airline tickets after the petition was filed, the airline would have been entitled to administrative priority. But even though the Agreement may have been an executory contract under § 365, in our view that fact is not dispositive for § 503 purposes. Use of the airline tickets in
 
 Knutson
 
 would have required a post-petition affirmative act by the debtor. Jartran, on the other hand, did not have to act at all in order to enjoy the benefits of the ads. Thus,
 
 Knut-son
 
 is inapposite.
 

 In re Mammoth Mart, Inc., supra,
 
 decided that severance pay claims were entitled to administrative priority only to the extent that the severance pay accrued based on post-petition employment. Thus, if an employee earned severance pay based
 
 *590
 
 on years of service to the debtor, only the severance pay attributable to post-petition years of service would be granted administrative priority. The employee would be a pre-petition creditor with respect to any severance pay earned prior to filing. The result in
 
 Mammoth Mart
 
 supports our result here. Nothing the employer in
 
 Mammoth Mart
 
 could have done after filing the petition would have affected the amount of severance pay accrued before the filing. Likewise, it has not been pointed out to us how Jartran, as debtor-in-possession, could do anything to further or prevent publication of, or appellants’ liability for, the ads in question.
 
 [6]
 

 Appellants contend that, in addition to their purely statutory arguments, considerations of equity and fairness dictate a result in their favor. We are not persuaded by these arguments because we do not perceive any greater hardships to them than arise normally as the consequence of a reorganization. All creditors, to some extent, assume the risk of bankruptcy. Appellants may, by the arrangement they made with Jartran, have assumed the risk for too long a period. It may seem inequitable that no priority is granted even though the benefits of appellants’ performance were enjoyed by Jartran only after the onset of reorganization. However, recognition of appellants’ equitable claim would presumably be at the expense of other pre-petition creditors and thus would violate the fundamental principle underlying the bankruptcy laws that all parties that have extended credit to the debtor should share equally with similarly situated creditors. The logic of appellants’ fairness argument would apparently require priority for all creditors whose extension of credit
 
 benefited
 
 the debtor-in-possession regardless of when the credit was extended. This construction would be contrary to the reason the priority was created: as a practical incentive to achieving reorganization for the benefit of all creditors.
 

 Appellants make the further claim that the unique characteristics of the Yellow Pages business, especially the significant time between the closing and publication dates and the length of time the ads run after publication, require special consideration. This argument is reducible to two contentions: First, appellants find it unfair that Jartran “is not responsible to pay for its advertising”
 
 [7]
 
 published after the petition was filed while first priority is given to providers of other post-petition goods and services. Second, appellants claim that the “financial effect of [a decision against administrative priority] would be prohibitive if not catastrophic” because they would have to insist on advance payment in the future thus forcing advertisers to pay for two years of advertisements at once. To the first argument, we can refer only to our discussion of why the obligation to pay for the ads, for § 503 purposes, was irrevocable as of the closing date and thus not comparable with other expenses incurred by the debtor-in-possession after filing. As
 
 *591
 
 to the second prong of appellants’ “parade of horribles,” on this record we cannot conclude that a major disruption in Yellow Pages advertising will occur as a result of our decision. We have no way of knowing how serious a problem bankruptcies of advertisers poses to companies performing Donnelley’s service. Perhaps insurance or different methods of payment (letters of credit were mentioned at oral argument) could ameliorate the difficulties caused by advertiser bankruptcies. Finally, even if significant problems were likely to result, this is a matter for the Congress.
 

 III.
 

 In summary, the underlying purposes of § 503 compel the conclusion that the bankruptcy court and district court here reached the correct result. We leave to another day the problem of what sort of post-petition conduct by the debtor could lead to a conclusion that the contract had been affirmed and that the claimant was thus entitled to administrative priority. Here there is no allegation of such conduct of affirmation.
 

 Therefore, the order of the district court is affirmed.
 

 [1]
 

 . The date upon which ads were irrevocably placed is referred to in the Agreement and by the parties as the "closing date.” On that date, up to six months prior to actual publication, ads could no longer be withdrawn from the directory. Each directory had its own closing date, but Donnelley uniformly billed the advertisers after publication. The Agreement provided that cancellations were effective only with respect to directories for which the closing date had not passed.
 

 [2]
 

 . Appellants agree that billing for ads published before the petition for reorganization was filed should be treated as non-priority, pre-petition debts. The parties also agree that expenses for ads for which the closing date occurred after the petition was filed are entitled to § 503 priority. The Agreement (of September 11) was rejected by Jartran as an executory contract on April 6, 1982.
 
 See
 
 11 U.S.C. § 365.
 

 [3]
 

 . The quoted language from
 
 Mammoth Mart
 
 is an alternative formulation of the first part of the two part test developed in that case.
 

 [4]
 

 . Another court, faced with the identical issue raised in this case, has held that the closing date was the appropriate date of performance and thus denied administrative priority to all claims as to which the closing date accrued before filing of the petition.
 
 See In re Baths International, Inc.,
 
 31 B.R. 143 (S.D.N.Y.1983),
 
 aff'g
 
 25 B.R. 538 (Bkrtcy.S.D.N.Y.1982). To call the closing date the date of performance is misleading, however, because Jartran was not obligated to pay for the ads unless and until the ads were successfully published in the Yellow Pages. Normally, the last conduct giving rise to contractual liability would be characterized as "per
 
 *588
 
 formance.” We need not, however, be concerned over this discrepancy in characterization because
 
 Mammoth Mart's
 
 language with respect to inducement captures the policy underlying the priority and, under the circumstances of this case, makes the closing date decisive.
 

 [5]
 

 . In
 
 Unishops,
 
 the court held that severance pay claims were entitled to priority despite the fact that the amount of severance pay was calculated based on pre-petition years of service. 553 F.2d at 308. The Second Circuit adhered to its earlier holdings that severance pay is not accrued over time but is instead "compensation for termination of employment and hence usually an expense of administration.”
 
 Id.,
 
 n. 1.
 
 See also Straus-Duparquet, Inc. v. Local Union No. 3,
 
 386 F.2d 649, 650-51 (2d Cir.1967) (distinguishing severance pay from vacation pay; the former is compensation for termination while the latter is "earned from day to day”).
 

 [6]
 

 . The Second Circuit, with respect to severance pay claims, declined to follow
 
 Mammoth Mart
 
 in
 
 In re W.T. Grant Co.,
 
 620 F.2d 319, 321 (2d Cir.) (per curiam),
 
 cert. denied,
 
 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980). It is therefore significant that the bankruptcy court and district court, within the Second Circuit, in
 
 Baths
 
 found
 
 Mammoth Mart
 
 persuasive with respect to the Yellow Pages claim.
 
 See supra
 
 note 4. Perhaps the First and Second Circuits’ disagreement on severance pay claims is on the narrow ground that the First Circuit is unwilling to view severance pay as “compensation for termination” as the Second Circuit does, at least where the amount of severance pay depends on the length of service. The Second Circuit relied on a single New Jersey case for its characterization of severance pay.
 
 See Straus-Duparquet, Inc. v. Local Union No. 3,
 
 386 F.2d at 651. In any event, if the results in the courts of the Southern District of New York are an indication, the Second Circuit might agree with us that priority status should not be granted to Yellow Pages advertising in these circumstances.
 

 [7]
 

 . This seems to be a bit of an exaggeration by appellants since nothing in the record indicates that they will have
 
 no
 
 claim as a general creditor against the estate. In
 
 Reading Co. v. Brown,
 
 391 U.S. at 479, 88 S.Ct. at 1763, the Supreme Court granted administrative priority to tort claimants, in part because the tort claimants there would have had no other claim against the estate.