## In re NEW YORK TRAP ROCK CORPORATION, Lone Star Industries, Inc., et al., Debtors.

## In re LONE STAR INDUSTRIES, INC., Debtor.

### Bankruptcy Nos. 90 B 21276–90 B 21286, 90 B 21334 and 90 B 21335.

United States Bankruptcy Court, S.D. New York.

March 6, 1992.

---

**570**

Sills Cummis Zuckerman Radin Tischman Epstein & Gross, P.C., New York City, and Bonham Carrington & Fox, P.C., Houston, Tex., for Brown & Root, Inc.

Proskauer Rose Goetz & Mendelsohn, New York City, for debtors.

## DECISION ON MOTION OF BROWN & ROOT, INC. FOR ORDER COMPELLING DEBTOR TO HONOR INDEMNIFICATION OBLIGATION, ASSUME DEFENSE OF LITIGATION AND REIMBURSE BROWN & ROOT FOR COSTS AND EXPENSES

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Brown & Root, Inc. ("Brown & Root"), a general contractor and a creditor, has moved for an order compelling the debtor to (i) honor a prepetition indemnification agreement; (ii) assume the defense of litigation commenced against Brown & Root by a subcontractor for the debtor; and (iii) reimburse Brown & Root for costs and expenses incurred during the administration of this Chapter 11 case as an administrative priority claim. The Chapter 11 debtor in this case, Lone Star Industries, Inc., opposes the Brown & Root motion and contends that Brown & Root's indemnification claim gives rise to a prepetition unsecured claim and is not entitled to an administrative expense status. Additionally, the debtor asserts that it should not be compelled to assume a prepetition indemnification obligation by defending the litigation against Brown & Root in the United States District Court for the Northern District of Illinois, thereby elevating such prepetition claim to an administrative expense priority, nor should it be required to pay Brown & Root's litigation expenses other than pursuant to a plan of reorganization.

### FINDINGS OF FACT

1. On December 10, 1990, Lone Star Industries, Inc., the debtor, filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. The debtor continues to operate its business and manage its affairs as debtor-in-posses-

sion in accordance with 11 U.S.C. §§ 1107 and 1108.

2. Among the assets of the debtor's estate is a cement plant located in Oglesby, Illinois (the "Oglesby Plant"). On June 1, 1989, Brown & Root executed a contract with the debtor to act as construction manager for the modernization of the Oglesby Plant (the "Contract"). The Contract provided, *inter alia,* that: (i) Brown & Root, as agent for the debtor, would subcontract for various services to implement the modernization project on the Oglesby Plant; (ii) Brown & Root would not make any payments to vendors or subcontractors without the debtor's prior written approval and such payments would be made from a "zero-balance bank account" funded by the debtor; and (iii) Brown & Root would be indemnified and held harmless by the debtor if Brown & Root was subjected to any loss, damages, fines or penalties, or any cancellation fees because of such nonpayment. The indemnity was stated in paragraph 10.4 as follows:

CONTRACTOR shall not make any payments to vendors or subcontractors without OWNER's prior written approval. Should CONTRACTOR become subject to any loss, damages, fines or penalties, or any cancellation fees because of such non-payment, CONTRACTOR shall be indemnified and shall be held harmless by OWNER.

3. On August 10, 1990, Brown & Root, as agent for the debtor, executed a subcontract with International Riggers, Inc. ("IRI") for structural and mechanical work at the Oglesby Plant (the "IRI Subcontract").

4. On December 26, 1990, the debtor filed a motion for an Order (i) Authorizing Lone Star to Assume (a) an Executory Construction Contract and (b) an Executory Utility Contract; (ii) Approving the Terms of a Certain Construction Contract; and (iii) Authorizing Lone Star to Satisfy Certain PrePetition Obligations. In this three-pronged motion (the "Motion"), the debtor also sought authority to assume the IRI Subcontract and to cure defaults thereunder.

5. On January 9, 1991, the court entered an Order Approving the Motion which authorized the debtor to assume the IRI Subcontract. This assumption was unusual in that the debtor was not an original party to the IRI Subcontract. Moreover, Brown and Root, which was an original party to the IRI Subcontract, was bypassed when the debtor took it upon itself to assume a contract to which it was originally not a party. Upon assumption of the IRI Subcontract, the debtor agreed to cure the prepetition arrearages under the IRI Subcontract by paying twenty-five percent of the arrears within two days after the entry of the Order, and the balance in six equal monthly installments commencing on January 20, 1991.

6. The modernization project on the Oglesby Plant was estimated to be eighty-five percent complete on December 10, 1990, the date the debtor filed its bankruptcy petition filing date. In January of 1991, the debtor and Brown & Root executed a post-petition contract which provided that Brown & Root would perform such further construction management, procurement, engineering and other administrative services as required to complete the Oglesby Project. There was no indemnification clause in this post-petition contract with Brown & Root.

7. Despite having assumed the IRI Subcontract, the debtor failed to cure the arrearages as prescribed by the court's Order approving the Motion. In an attempt to recover such arrearages from Brown & Root, on May 13, 1991, IRI filed its Complaint against Brown & Root in Civil Action No. 91–C–20148 in the United States District Court for the Northern District of Illinois.

8. By letter dated July 18, 1991, the attorney for Brown & Root wrote to the attorneys for the debtor and stated that inasmuch as the debtor assumed two of the major subcontracts for the modernization of the debtor's Oglesby cement plant, it was requested that the debtor file appropriate pleadings seeking authority for the bankruptcy court to approve the assumption of the Brown & Root contract.

9. By letter dated August 30, 1991, Brown & Root requested that the debtor: (i) honor the indemnification obligation in the prepetition contract; (ii) assume defense of the IRI Litigation; and (iii) reimburse Brown & Root for all of its costs and expenses in defense of said Litigation. To date, the debtor has refused to act upon Brown & Root's requests.

## DISCUSSION

The narrow issue in this case is whether or not the debtor's prepetition obligation to indemnify Brown & Root for expenses incurred by Brown & Root as agent and general contractor for the debtor also triggered a post-petition administrative expense claim in favor of Brown & Root because of the debtor's post-petition conduct. To qualify as an administrative expense, the claim must satisfy section 503(b)(1)(A), which accords administrative expense status for "the actual, necessary costs and expenses of preserving the estate ... for services rendered after the commencement of the case...." 11 U.S.C. § 503(b)(1)(A). Manifestly, expenses incurred by a debtor in possession in attempting to rehabilitate the business during reorganization are within the pale of 11 U.S.C. § 503. *Reading Co. v. Brown*, 391 U.S. 471, 475, 88 S.Ct. 1759, 1761, 20 L.Ed.2d 751 (1968); *In re Hemingway Transport, Inc.*, 954 F.2d 1 (1st Cir.1992); *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986); *In re Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984); *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950 (1st Cir.1976); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 482 (Bankr. S.D.N.Y.1991); *In re Chateaugay Corporation*, 102 B.R. 335 (Bankr.S.D.N.Y.1989).

█ Generally, a claim for an administrative expense status will qualify under 11 U.S.C. § 503 if the right to payment arose from a post-petition transaction with the debtor estate rather than from a prepetition transaction with the debtor, and the conduct giving rise to the payment was beneficial to the estate of the debtor. *Hemingway Transport*, 954 F.2d at 10;

*Jartran*, 732 F.2d at 587; *Mammoth Mart*, 536 F.2d at 954. The burden of proving entitlement to an administrative expense priority rests with the party requesting it. *Hemingway Transport*, 954 F.2d at 10; *Drexel Burnham*, 134 B.R. at 489. Additionally, administrative expense priorities are to be narrowly construed to foster the paramount principle in bankruptcy of equitable distribution among creditors. *McFarlin's*, 789 F.2d at 100; *Jartran*, 732 F.2d at 586; *Mammoth Mart*, 536 F.2d at 953. In sum, a two-fold test is applicable in determining administrative expense status under 11 U.S.C. § 503(b)(1)(A): (1) the claim must arise out of a post-petition transaction between the creditor and the trustee or debtor in possession and (2) the claim is allowable only to the extent the consideration supporting the claimant's right to payment was both supplied to and beneficial to the post-petition estate in the operation of the business. *McFarlin's*, 789 F.2d at 101; *Jartran*, 732 F.2d at 587; *Mammoth Mart*, 536 F.2d at 954.

█ In the instant case, the prepetition contract between the debtor and Brown & Root, dated June 1, 1989, specifically provided that the debtor, as principal, would indemnify Brown & Root, as agent and general contractor, for any loss, damages, fines or penalties with respect to the construction work at the debtor's cement plant in Oglesby, Illinois. The fact that post-petition defaults by the debtor on the assumed IRI Subcontract may have triggered the debtor's prepetition obligation to indemnify Brown & Root for losses or damages does not mean that Brown & Root's contingent claim for indemnification was elevated and transformed into a post-petition administrative claim. Initially, it should be observed that Brown & Root's claim is contingent because there was no proof that Brown & Root made any payments for which indemnification accrued. Under Texas law, which applies to the IRI Subcontract pursuant to provisions contained therein, the right to indemnification does not accrue until the party seeking indemnification is required to pay on the loss to the indemnitee. *Dresser Indus-*

*tries, Inc. v. Page Petroleum, Inc.,* 821 S.W.2d 359, 362 (Tex.Ct.App.1991), *rehearing denied,* Jan. 15, 1992. Nonetheless, a contingent claim for indemnification constitutes a right to payment under 11 U.S.C. § 101(4)(A) and is allowable as a claim. *In re Amfesco Industries, Inc.,* 81 B.R. 777, 781 (Bankr.E.D.N.Y.1988). However, to the extent that such claim is bottomed on the indemnification clause in the debtor's June 1, 1989 contract with Brown & Root, which was not assumed by the debtor, it does not implicate a post-petition transaction with the debtor.

■ A prepetition lease containing an indemnification agreement with respect to attorney's fees does not give rise to a post-petition administrative expense claim merely because the lessor incurred post-petition legal expenses as a result of the debtor's post-petition use of the premises. *Hemingway Transport,* 954 F.2d at 10. The First Circuit Court of Appeals concluded that the lessor's prepetition ownership of the premises and its prepetition lease containing the indemnity clause provided the genesis for the claim. *Id.* Similarly, in *Christian Life Center v. Silva (In re Christian Life Center),* 821 F.2d 1370 (9th Cir.1987), a corporation's statutory and contractual duty to indemnify its officers and directors against litigation costs was treated as a prepetition general unsecured claim despite the fact that the litigation costs were generated in the post-petition period. In *Chateaugay,* an indemnity loss claim which arose as a result of post-confirmation events was denied administrative expense status. *Chateaugay,* 102 B.R. at 352. Moreover, in *Amfesco Industries,* a debtor's certificate of incorporation included a provision calling for indemnification of officers and directors for liabilities incurred by them in their corporate capacities. The post-petition legal fees incurred by the officers and directors in defending actions against them in their official capacities were denied administrative expense status under 11 U.S.C. § 503(b)(1)(A) because the expenses did not arise from a post-petition cause of action against the debtor. *Amfesco Industries,* 81 B.R. at 784.

■ To qualify as an expense of administration, the claimant must show that the post-petition debtor in possession induced the claimant to incur the post-petition expenses or perform the post-petition services for which an administrative expense priority is claimed.

To serve the policy of the priority, inducement of the creditor's performance *by the debtor-in-possession* is crucial to a claim for administrative priority in the context of the furnishing of goods or services to the debtor.

*Jartran,* 732 F.2d at 587 (emphasis in original). Hence, the indemnity provision in the June 1, 1989 contract between the debtor and Brown & Root, which was not assumed by the debtor, cannot, without additional post-petition conduct by the debtor, support Brown & Root's claim for administrative priority with respect to the legal fees and expenses they sustained in connection with the construction work at the debtor's cement plant in Oglesby, Illinois.

■ There is, however, an additional feature in this case which did not occur in any of the cases previously cited, namely, that the debtor assumed the August 10, 1990 IRI Subcontract which Brown & Root, as agent for the debtor, entered into with IRI. This post-petition contract assumption was approved by the court pursuant to an order dated January 9, 1991. Although the debtor was not originally a party to the IRI Subcontract, it chose to assume responsibility for continuing the construction work as a benefit to the estate and its creditors. Until the debtor assumed the IRI Subcontract, Brown & Root, as general contractors, were directly responsible to IRI for payments and other obligations called for under the contract. However, once the debtor assumed the IRI contract in the post-petition period, it thereby transformed all expenses incurred under this contract to administrative priority as a continued inducement to do business with a debtor in possession.

Congress reasoned that unless the debts incurred by the debtor in possession could be given priority over the debts which forced the estate into bankruptcy

in the first place, persons would not do business with the debtor in possession, which would inhibit rehabilitation of the business and thus harm creditors.

*McFarlin's,* 789 F.2d at 101 (citations omitted).

■ When a debtor in possession or a trustee assumes a prepetition contract or unexpired lease, such adoption includes all the warts and baggage attributed to the assumed contract or lease, or, as the late Judge Learned Hand said, *"cum onere."* *Palmer v. Palmer,* 104 F.2d 161, 163 (2d Cir.), *cert. denied,* 308 U.S. 590 & 591, 60 S.Ct. 120 & 121, 84 L.Ed. 494 (1939). The debtor may not selectively accept the benefits of Brown & Root's Subcontract with IRI without also assuming Brown & Root's obligations incurred under such contract.

■ There is an additional reason why Brown & Root's claim is entitled to an administrative expense priority under 11 U.S.C. § 503(b)(1)(A). As noted earlier in this opinion, under the general rules of agency applicable under Texas law, which govern the IRI Subcontract, an agent is entitled to indemnity when it actually pays for a liability which arose from transactions performed for the benefit of the principal in furtherance of the agency relationship. *Dresser Industries, Inc. v. Page Petroleum, Inc.,* 821 S.W.2d 359, 362 (Tex.Ct. App.1991), *rehearing denied,* Jan. 15, 1992. *See also Mercedes–Benz of North America, Inc. v. Dickenson,* 720 S.W.2d 844, 858 (Tex.Ct.App.1986); *MortgageAmerica Corporation v. American National Bank of Austin,* 651 S.W.2d 851 (1983); *Oats v. Dublin National Bank,* 127 Tex. 2, 90 S.W.2d 824 (1936). When the debtor assumed the IRI Subcontract for the benefit of the estate, such post-petition assumption also incorporated the implied obligation of a principal to indemnify its agent for obligations incurred by the agent in furtherance of the assumed contract. This assumed post-petition obligation is given an administrative expense priority under 11 U.S.C. § 503(b)(1)(A). *McFarlin's,* 789 F.2d at 101.

■ Thus, it was the post-petition debtor in possession that induced IRI to perform the services under the IRI Subcontract which also gave rise to Brown & Root's expenses for which indemnification as an administrative expense are sought. The post-petition inducement of IRI's services and Brown & Root's expenses were fueled by the debtor's assumption of the IRI Subcontract, which is crucial to Brown & Root's claim for administrative priority. *See Jartran,* 732 F.2d at 587. To determine the existence of the implied indemnity obligation under the assumed contract which gave rise to the inducement, reference must be had to the applicable state law, which in this case is Texas law. *See Drexel Burnham,* 134 B.R. at 490. A principal's implied obligation under Texas law to indemnify its agent for expenses incurred in furtherance of the agency relationship was incorporated into the IRI Subcontract which the debtor assumed, thereby entitling Brown & Root to seek indemnification from the debtor as an administrative expense priority.

The debtor could have protected itself from elevating Brown & Root's expenses to administrative priority status by simply not assuming the June 1, 1989 IRI Subcontract that Brown & Root entered into with IRI. If the debtor wished to keep Brown & Root out of the post-petition picture with respect to the original IRI Subcontract, it need only have entered into a new contract directly with IRI. In such event, the new post-petition contract with IRI would not have incorporated the prepetition claim and post-petition expenses associated with the June 1, 1989 Brown & Root Subcontract with IRI.

## *Defense of IRI Litigation*

■ Although Brown & Root may properly claim an administrative expense priority for expenses incurred under the IRI Subcontract, it does not follow that the debtor may be compelled to defend the IRI litigation commenced against Brown & Root. The indemnification provision relied upon by Brown & Root in its June 1, 1989 agreement with the debtor fails to contain any affirmative duty to defend litigation against Brown & Root under subcontracts

for construction work at the debtor's Oglesby cement plant. The court will not now rewrite the agreement so as to include provisions to which the parties never agreed.

 Where a contract is unambiguous, the doctrine of *strictissimi juris* applies to prevent the indemnitor's liability from being extended beyond the terms of the agreement. *Mitchells', Inc. v. Friedman,* 157 Tex. 424, 303 S.W.2d 775 (1957). It is clear that under the indemnity provision in the June 1, 1989 contract with Brown & Root, the debtor merely had the duty to indemnify Brown & Root for damages, losses, nonpayment, fines and expenses relating to the construction work at the debtor's Oglesby cement plant. Therefore, the debtor had no obligation to defend litigation commenced against Brown & Root, although it had the right to do so if it so chose. *Liberty Steel Co. v. Guardian Title Co. of Houston, Inc.,* 713 S.W.2d 358, 361 (Tex.Ct.App.1986).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 28 U.S.C. § 157(a). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).

2. Brown & Root's expenses incurred in furtherance of the IRI Subcontract which the debtor assumed pursuant to order of this court dated January 9, 1991, shall be classified as an administrative expense priority in accordance with 11 U.S.C. § 503(b)(1)(A).

3. Brown & Root's motion for reimbursement of its expenses incurred in furtherance of the IRI Subcontract is denied because such claim shall be paid pursuant to 11 U.S.C. § 503(b)(1)(A).

4. Brown & Root's motion for an order compelling the debtor to assume the defense of the litigation commenced by IRI against Brown & Root in the United States District Court for the Northern District of Illinois, is denied.

SETTLE ORDER in accordance with the foregoing.