**NORTH AMERICAN PRINTING INK COMPANY, Appellant,**

v.

**REGENSTEINER PRINTING COMPANY, Appellee.**

**Nos. 91 C 6996, 90 B 4616.**

United States District Court, N.D. Illinois, E.D.

March 20, 1992.

See also, 122 B.R. 323.

Scott Neil Schreiber, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, Ill., for appellant.

Steven Bennett Towbin, Towbin & Zazove, Ltd., Chicago, Ill., for appellee.

## MEMORANDUM OPINION

GRADY, District Judge.

North American Printing Ink Company ("NAPIC") appeals from a bankruptcy court's order of September 17, 1991, denying its claim for an administrative expense. For the reasons stated below, the order is affirmed.

FACTS

NAPIC supplied ink to Regensteiner Printing Company ("Regensteiner") by shipping large steel containers ("totes") fully loaded with ink. Brief of Appellant, at 2. NAPIC would bill Regensteiner after NAPIC picked up the totes and determined how much ink had been consumed. *Id.* at 3. NAPIC delivered and Regensteiner received totes 122, 129, 121 and 119 between October 1989 and January 1990. *Id.* at 4. On March 13, 1990, Regensteiner filed for Chapter 11 relief. *See In re Regensteiner Printing Co.,* No. 90–4616, slip op. (Bankr. N.D.Ill. Sept. 17, 1991) (Memorandum Opinion Regarding Debtor's Objection to Claim). NAPIC later billed Regensteiner $23,901.35 for the ink consumed from totes 122, 129, 121 and 119.[1] Brief of Appellant, at 4. Regensteiner did not make this payment. *Id.* NAPIC then filed a claim in bankruptcy court seeking $23,901.35 as an administrative expense pursuant to 11 U.S.C. § 503 and Judge Sonderby denied its claim. *Id.* at 4–5. NAPIC now seeks a reversal of the bankruptcy court's order.

DISCUSSION

"The district and appellate courts review factual findings of the bankruptcy courts under a clearly erroneous standard, but review conclusions of law *de novo.*" *Ma-*

---

1. The parties dispute when NAPIC recovered the totes; but this fact is not dispositive of NAPIC's claim. *See infra.*

*gill v. Newman,* 903 F.2d 1150, 1152 (7th Cir.1990).

This case involves § 503(b)(1)(A) of the bankruptcy code, which provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses ... including the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

*Jartran decision*

■ In *In re Jartran, Inc.,* 732 F.2d 584 (7th Cir.1984), the Seventh Circuit stated that "a claim will be afforded priority under § 503 if the debt both (1) 'arise[s] from a transaction with the debtor-in-possession' and (2) is 'beneficial to the debtor-in-possession in the operation of the business.'"² 732 F.2d at 587 (quoting *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir. 1976)). Further, "[t]o serve the policy of the priority, inducement of the creditor's performance *by the debtor-in-possession* is crucial to a claim for administrative priority in the context of the furnishing of goods or services to the debtor." *Jartran,* 732 F.2d at 587. The undisputed facts of this case show that NAPIC was not induced to perform by Regensteiner post-petition. NAPIC fulfilled its contractual obligations by furnishing the ink to Regensteiner pre-petition.³

■ NAPIC argues that, although the ink was furnished pre-petition, the contract between NAPIC and Regensteiner was executory and, therefore, NAPIC's claim is subject to administrative priority. Although authority exists to support the proposition that claims resulting from executory contracts may get administrative pri-

**2.** Whether the debtor-in-possession—Regensteiner—benefitted from the transaction is a disputed issue but need not be resolved to decide NAPIC's claim. *See Jartran,* 732 F.2d at 587 (post-petition benefit alone is not dispositive of § 503 claim).

**3.** NAPIC argues that *Jartran* does not apply here, because Regensteiner's liability was not irrevocably determined pre-petition, like the debtor's liability in *Jartran.* To recover an administrative expense, the Seventh Circuit did not require liability to be irrevocably determined. *See Jartran,* 732 F.2d at 588. It simply required *inducement of the creditor by the post-petition debtor-in-possession,* which, on the facts of *Jartran* was not demonstrated because liabili-

ority,⁴ an executory contract is one " 'on which performance remains due to some extent on both sides.' " *N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984) (citations omitted). The contract between NAPIC and Regensteiner was not executory, because NAPIC completed its obligations under the contract by delivering the ink to Regensteiner pre-petition.⁵

*Requirement of a Hearing*

■ NAPIC also argues that the bankruptcy court committed reversible error when it decided, without holding a hearing, that NAPIC was not entitled to an administrative expense. Section 102 provides that "[a]fter notice and hearing ... means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). Further, the statute "authorizes an act without an actual hearing if such notice is given properly and if (i) such hearing is not requested timely by a party in interest; or (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act." 11 U.S.C. § 102(1)(B).

NAPIC argues that the only time that a court may dispense with a hearing is when a hearing is not requested timely or when there is insufficient time for a hearing, and that neither of these exceptions applies here. Regensteiner agrees that neither exception applies, but argues that a hearing was not needed because no material facts were in dispute.

ty had been irrevocably determined pre-petition. *See Jartran,* 732 F.2d at 588–89 (liability for costs of ads irrevocably incurred pre-petition, because date on which ads could be withdrawn had passed).

**4.** In a footnote, NAPIC states that an informal implied contract existed post-petition if an executory contract did not exist. NAPIC has not argued any facts to show that a contract, separate from the pre-petition contract, was formed post-petition.

**5.** Further, "inducement," which is a necessary component of an administrative claim, is not present in this case. *See Jartran,* 732 F.2d at 588.

476

■ Due process requirements apply in bankruptcy proceedings. *See Wright v. Union Central Life Ins. Co.,* 304 U.S. 502, 518, 58 S.Ct. 1025, 1034, 82 L.Ed. 1490 (1938). However, due process does not always require a hearing. For example, a hearing is not required when the adversary does not contest the requested action. *See United States v. Brandt (In re Lissner Corp.),* 119 B.R. 143, 147 (N.D.Ill.1990). Further, § 102 is worded to require "such *notice* as is appropriate in the particular circumstances," but only requires "such *opportunity for a hearing* as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A) (emphasis added). The statute's wording indicates that Congress required actual "notice" but gave courts discretion on whether to hold hearings. "[T]he particular circumstances" of this case, in which no material factual issues were disputed, did not require a hearing.[6] *See In re Baker Oil Well Servs.,* 1991 WL 49722, *4–*6 (D.Kan. Mar. 5, 1991).

CONCLUSION

A hearing on NAPIC's claim was not required; and NAPIC is not entitled to an administrative expense, because NAPIC was not induced by Regensteiner to perform post-petition. The bankruptcy court's order of September 17, 1991, is affirmed.

---

6.  NAPIC asserts that a previous opinion of this court supports its argument that a hearing was necessary in this case. That case, unlike the present case, required a hearing to resolve relevant evidentiary matters. *See In re Regensteiner Printing Co.,* 122 B.R. 323, 326 (N.D.Ill.1990).