979 F.2d 847
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In Re: THE ALPHA CORPORATION OF VIRGINIA, Debtor.
J.C.ARNEY, Plaintiff-Defendant,
v.
MRI TANGLEWOOD RENTAL INVESTMENTS, INCORPORATED; MP
Associates; Donald W. Huffman, Trustee,
Defendants-Appellees.
 United States Court of Appeals,
Fourth Circuit.
 Argued: September 28, 1992
Decided: November 18, 1992
As Amended Jan. 5, 1993.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke.
 Argued: John Saul Edwards, Martin, Hopkins, Lemon & Edwards, P.C ., Roanoke, Virginia, for Appellant.
 Kenneth Jordan Lasky, Bird, Kinder & Huffman, P.C., Roanoke, Virginia, for Appellees.
 On Brief: Gary M. Bowman, Martin, Hopkins, Lemon & Edwards, P.C., Roanoke, Virginia, for Appellant.
 Phillip D. Payne, IV, Lovingston, Virginia, for Appellee MRI Tanglewood; Luis A. Abreau, Clement & Wheatley, Danville, Virginia, for Appellee MP Associates.
 W.D.Va.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and PHILLIPS and WILLIAMS, Circuit Judges.
 PHILLIPS, Circuit Judge:
 
 
 1
 The question is whether two loans, one pre-petition and the other post-petition, to a Chapter 11 debtor-in-possession by the bankrupt's sole stockholder should be accorded administrative expense priority in the Chapter 7 proceeding into which the original Chapter 11 proceeding had been converted. The district court, affirming the bankruptcy court, refused to accord either of the loans administrative expense priority. We affirm.
 
 
 2
 * Alpha Corporation of Virginia ("Alpha") operated retail clothing stores in several shopping malls in southwest Virginia. It had three stockholders: David M. Mangrum, Matthew T. Moran, and Appellant, J. C. Arney. In December 1988, with Alpha in financial difficulty, Mangrum and Moran transferred their shares to Arney. Although he was personally liable for some of Alpha's larger debts, Arney had had little or no involvement in Alpha's management until the stock transfer. Nevertheless, Arney took over Alpha's day-to-day operations and agreed to place the company in Chapter 11 bankruptcy proceedings. Moran remained as president solely to sign the bankruptcy petition, which he intended to do on January 3, 1989. Due to an unexpected delay, Moran did not sign the petition until late in the day on January 4. Consequently, the petition was not filed until January 5.
 
 
 3
 On January 3, 1989, Arney had given two checks of the same date totalling $45,000 to Michael Aheron, Alpha's corporate attorney. The funds were intended to provide $15,700 to retain Aheron's services during the Chapter 11 proceedings and $29,300 to pay past due, prepetition rent as well as post-petition rent on Alpha's stores. On a ledger entitled "The Alpha Corporation: Reorganization," Aheron recorded checks drawn on January 4th from the $45,000 to cover the retainer and rent payments.
 
 
 4
 On March 7, 1989, Arney also lent $20,000 to Alpha's debtor-inpossession, a loan evidenced by a promissory note, to cover ongoing business expenses of salaries, wages, inventory acquisition, and rent. During the Chapter 11 proceedings, Arney actively sought to sell Alpha. His efforts failed, however. In April 1989 the bankruptcy was converted to a Chapter 7 proceeding and the company's assets were liquidated in a foreclosure sale.
 
 
 5
 In August 1990, Arney sought to recover the amount of the two loans as administrative expenses incurred during Alpha's attempted reorganization. Two of Alpha's creditors objected. After a hearing, the bankruptcy court denied Arney's claim. That court found the $45,000 loan ineligible for administrative expense priority because it was made pre-petition. The court also held the $20,000 loan ineligible because it was made to further Arney's efforts to sell Alpha, hence was an expense which the court concluded as a matter of law was not one incurred in the ordinary course of business. The district court affirmed the decision of the bankruptcy court.
 
 
 6
 This appeal by Arney followed.
 
 II
 
 7
 The two loans present different issues, and we therefore will consider them separately. Preliminarily, we summarize some controlling principles of bankruptcy law applicable to one or the other or both.
 
 
 8
 Administrative expenses under the Bankruptcy Code include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A) (1991). If allowed, they have first priority among unsecured claims against the bankruptcy estate. 11 U.S.C. § 507(a)(1) (1991). To qualify as such an administrative expense, the expense must be incurred by and confer a benefit upon a debtor-in-possession. In re Jartran, Inc., 732 F.2d 584, 587 (7th Cir. 1984). A "debtor" under the Bankruptcy Code is one concerning whom "a case under [the Bankruptcy Code] has been commenced" and such a "case" is commenced only upon the filing of a petition in bankruptcy. 11 U.S.C. §§ 101(13), 301 (1991). Therefore, a debtor-in-possession in Chapter 11 proceedings only comes into being as a legal entity when a petition is filed, so that only expenses thereafter incurred by that entity can qualify as administrative expenses. In re White Motor Corp., 831 F.2d 106, 110 (6th Cir. 1987). Loans to a debtor-in-possession may qualify as administrative expenses only if they occur "in the ordinary course of business" of the debtor, or, if not incurred in the ordinary course of business, with prior court approval. 11 U.S.C. § 364(a)-(b) (1991).
 
 
 9
 * We first consider the $45,000 payment made by Arney to attorney Aheron on January 3, 1989.
 
 
 10
 The bankruptcy court, affirmed by the district court, refused to treat this as an administrative expense. It did so on the straightforward basis that having been made before the petition in bankruptcy was filed on January 5, it could not qualify as a loan to a debtor-inpossession, hence as an administrative expense under the bankruptcy law principles above summarized.
 
 
 11
 Arney challenges the district court's treatment of this $45,000 advance as a pre-petition loan to Alpha. He contends that, rightly construed, the transaction involved the creation of a trust, with Arney as settlor, Aheron as trustee, and the debtor-in-possession as beneficiary. On this theory, Arney contends that the expense thereby created for the debtor-in-possession was only incurred when, following filing of the petition, the "trustee" delivered checks for the legal retainer and rent due respectively to Aheron's law firm and the landlords. Up until that time, says Arney, the trust proceeds remained subject to Arney's control as settlor of the trust, so that only upon their disbursement by Aheron as trustee was any obligation to repay the newly-created "loan" incurred by any entity, and that entity was then the debtor-inpossession.
 
 
 12
 Though the bankruptcy court did not address this trust theory expressly, it made findings of fact which effectively negated it. Specifically, the court found that when Arney on January 3 delivered the $45,000 check to Aheron, who was then Alpha's corporate counsel, he delivered it to an agent for Alpha, so that at that point Arney became a creditor of Alpha's for the amount of this" loan", thereby creating a pre-petition debt of Alpha, the not-yet-bankrupt debtor. J.A. 116.
 
 
 13
 Reviewing the bankruptcy court's judgment, the district court affirmed these critical fact findings as not clearly erroneous, and as necessarily dispositive against Arney's trust theory. J.A. 213-14.
 
 
 14
 We agree with the district court's analysis. Without deciding whether a trust device of the sort contended for by Arney could ever be structured in advance of a petition's filing so as to avoid treatment as a pre-petition expense, see, e.g., In re Kinderhaus Corp., 58 Bankr. 94, 97 (Bankr. D. Minn. 1986) (pre-petition retainer for post-petition legal services so treated), we agree that the bankruptcy court's factual findings here preclude any such legal conclusion.
 
 
 15
 The transaction was not expressly structured as either a "loan" or as a "trust." Its only documentary indicia were Arney's cashier checks endorsed to Aheron and delivered to him on January 3 and Aheron's ledger entries under a heading, "Alpha Corporation-Reorganization," showing later disbursements from his law firm's trust account of $45,000 to pay attorney fees and rent. According to Arney's testimony, he did not know how Aheron would handle the funds, his understanding being that "it would go into an account, escrow or general, I don't know." J.A. 98-99. There was no evidence supporting Arney's contention that he retained the power, as would a trust settlor, to reclaim or control disbursement of the funds. It was undisputed only that upon advancing these funds, Arney and Aheron, as Alpha's counsel, understood their intended use to be the discharge of obligations already or to be incurred by Alpha or its successor estate in bankruptcy.
 
 
 16
 On these facts, we agree with the district court's critical legal conclusion, affirming the bankruptcy court, that a $45,000 "loan" to Alpha was consummated by delivery of the funds to Alpha's then agent Aheron on January 3, and that this therefore constituted a prepetition expense incurred by Alpha. Arney's apparent contention that Aheron's post-petition use of these loan proceeds to pay expenses of the debtor-in-possession establishes the loan itself as a post-petition expense is misplaced. The question is when the "expense" arising from the loan came into existence; not when its proceeds were later used.
 
 
 17
 We therefore affirm the district court's holding that the $45,000 advance by Arney to Alpha's agent Aheron on January 3 did not qualify as an administrative expense.*
 
 B
 
 18
 We next consider the $20,000 post-petition loan by Arney to the now debtor-in-possession. As indicated, the district court, affirming the bankruptcy court, disallowed this as an administrative expense on the basis that it was not incurred in the ordinary course of business, as required by 11 U.S.C. § 364(a)-(b) (1991).
 
 
 19
 As the district court noted, this loan presented a"closer question," but we agree with the district court that it too was properly disallowed as an administrative expense, for the reasons given by both courts.
 
 
 20
 Because the debtor-in-possession did not get court approval for incurring this indebtedness, the burden was upon Arney to prove that it was incurred in the ordinary course of business. 11 U.S.C. § 364(a); In re O.P.M Leasing Services, Inc., 60 Bankr. 679, 680 (Bankr.
 
 
 21
 S.D.N.Y. 1986). Because Arney owned all of Alpha's stock when he made this loan, he was then an "insider" under the Code, 11 U.S.C. § 101(30)(B)(iii) (1991). As such, his dealings with the debtor-inpossession are subject to closer judicial scrutiny than would be required in assessing comparable arms-length transactions between an unrelated claimant and a debtor-in-possession. Pepper v. Litton, 308 U.S. 295, 306 (1939).
 
 
 22
 Assessing the matter in this light, the bankruptcy court, affirmed by the district court, concluded that Arney had not carried his burden to prove that this loan indebtedness was incurred in the ordinary course of the debtor-in-possession's business-the retail clothing business. The court was persuaded by the undisputed facts that, as sole owner of the business, Arney was the quintessential insider; that at the time he made this loan, he was actively engaged in an effort to sell the business as a going concern; and that he was exposed to personal liability for some of Alpha's debts. From these facts in combination, the bankruptcy court concluded that this indebtedness was not incurred in the ordinary course of Alpha's retail clothing business, but to enable Arney as its sole owner to liquidate the business on the most favorable possible basis to himself as one potentially liable personally to some of Alpha's creditors. As the bankruptcy court assessed the matter, this purpose-effectively to liquidate the business rather than reorganize it as a going concern-distinguished this loan from earlier pre-petition ones made by Arney which indisputably were for the purpose of shoring up the business as a going concern under its then ownership. J.A. 118. The bankruptcy court expressly adopted the reasoning of the court in In re C.E.N., Inc., 86 Bankr. 303 (Bankr. D. Me. 1988) that, on similar facts, the incurring of such a loan indebtedness could not qualify as an administrative expense under 11 U.S.C. § 364(a) because
 
 
 23
 the debtor was not continuing the business but preparing to sell its principal asset. The process of selling the principal asset of a business is not within the day-to-day business of the debtor.
 
 
 24
 J.A. 118.
 
 
 25
 The district court agreed with this reasoning of the bankruptcy court. To Arney's contention that C.E.N. was not apposite because there the debtor-in-possession was only attempting, with aid of a shore-up loan, to sell a principal asset of the business, while here the effort was to sell the entire business as a going concern, the court thought the difference not significant. We agree.
 
 
 26
 We believe, with the district court, that the bankruptcy court identified the crux of the matter when it noted that the principal concern in this type of insider-loan situation is the risk of unfairness to unsecured creditors if court approval is not secured.
 
 
 27
 When liquidation becomes the focus of a Chapter 11 [proceeding] and insiders feel compelled to inject capital to shore up the business until it is sold, unsecured creditors should have an opportunity for notice and a hearing on the proposed advances.
 
 
 28
 J.A. 119, 214.
 
 
 29
 This analysis emphasizes that the key to identifying expenses incurred in the ordinary course of a Chapter 11 debtor-in-possession's business is the extent to which unsecured creditors can fairly be held to be on constructive notice that such expenses will be so incurred. Insider shore-up loans under the circumstances of this case do not meet that test.
 
 
 30
 We therefore affirm the district court's conclusion-affirming the bankruptcy court-that the $20,000 post-petition loan by Arney does not qualify as an administrative expense, and should therefore not be accorded priority.
 
 AFFIRMED
 
 
 *
 So holding, we do not address the Trustee's alternative contention that it was in any event not an expense incurred in the ordinary course of business under 11 U.S.C. § 364(a)-(b) (1991). On that general issue, see Part II.B