Christina LADAS, Plaintiff,

v.

**POTPOURRI PRESS, INC. d/b/a Potpourri Designs, Defendant.**

No. CV 94–0292.

United States District Court, E.D. New York.

March 16, 1994.

Gordon & Gordon, (Peter S. Gordon, of counsel), Forest Hills, NY, for plaintiff.

Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P. (Jim W. Phillips, Jr., James H. Jeffries IV, and Wayne A. Logan, of counsel), Greensboro, NC, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff, Christina Ladas, a freelance artist, brought this action under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*, against Potpourri Press, Inc. (Potpourri), a North Carolina corporation. The amended complaint states claims for copyright infringement, trademark infringement, and false advertisement. It seeks a variety of relief both legal and equitable.

Jurisdiction is alleged pursuant to 28 U.S.C. § 1338(a), providing for jurisdiction over copyright and trademark actions, and 15 U.S.C. § 1121, providing for jurisdiction over Lanham Trademark Act actions.

Plaintiff has moved for a preliminary injunction preventing Potpourri from (1) claiming a copyright in her "Fancy Tulips" and "Della Robbia" designs; (2) selling or advertising products based on those designs; and (3) selling or advertising products containing plaintiff's full name or the name "Christina," as in the "Christina Collection."

### I

The papers submitted show, in substance, the following. Plaintiff is a designer and artist. Most of her business is in the decora-

tive arts and home furnishings industries. Potpourri markets giftware items that incorporate artwork. It typically includes one basic piece of artwork in a series, or "collection," which may contain up to 60 items. It markets a collection for several years and thereafter markets selected items from a collection for an additional few years.

## A. *The parties' relationship*

Plaintiff began working with Potpourri some time in the middle of 1985. From 1985 through 1988 she provided artwork to Potpourri on a freelance basis. Potpourri paid her for her designs an average of $39,664 per year from 1986 through 1988. Potpourri introduced those designs as collections from 1986 through 1988 and sold the collections from 1987 through 1992.

In the fall of 1988 plaintiff and Potpourri agreed to a three-year contract, memorialized in a letter dated November 21, 1988 and signed by David Grimes, the Chairman of Potpourri's board, and by plaintiff. According to that letter, Potpourri would pay plaintiff $100,000 per year and pay premiums for her on a $500,000 life insurance policy. Plaintiff, in turn, would provide artwork "each year for approximately 60 items in our line." According to the January 25, 1994 affidavit of Janet Pantuso, Potpourri's Vice President of New Product Development, those sixty items predominantly would be elements in 10 collections. Plaintiff assigned the copyright to Potpourri in a number of the designs she created during that period.

The parties fulfilled their contractual obligations through 1991, but they could not agree to a new long-term written contract. By letter dated January 22, 1992 Vice President Pantuso confirmed a one-year oral contract between plaintiff and Potpourri. Potpourri would again pay plaintiff $100,000 for the year, and plaintiff would provide artwork for two collections of approximately 15 pieces of art each, one "mini-collection" of five pieces of art, and six pieces of art for use on mugs. Plaintiff did not dispute what was contained in the letter, although it asked her to let Potpourri know if her "understanding of the arrangement" was "different." On the contrary plaintiff proceeded to create art-

work for two collections during 1992, namely those entitled "Fancy Tulips" and "Della Robbia."

The parties could not agree to new terms for the creation of artwork in 1993. Plaintiff apparently refused to accept Potpourri's offer of another year at $100,000, and Potpourri would not grant either a royalties-based contract or a raise to $250,000 per year. Plaintiff ceased providing artwork to Potpourri and currently provides new artwork to another producer of giftware.

On May 18, 1993 plaintiff registered her name, "Christina Ladas," as a trademark. On November 4, 1993 plaintiff registered her copyright in the "Fancy Tulips" and "Della Robbia" collections. The parties agree that she has a valid copyright in these collections.

According to plaintiff's memorandum of law in support of a temporary restraining order, at some unspecified time she refused to sign an assignment of the copyright in "Fancy Tulips" to Potpourri. There is nothing in the record showing that Potpourri sought an assignment of that copyright or the copyright to "Della Robbia," although Potpourri claims that the standard course of dealing between the parties was that plaintiff would assign copyrights to it. The only copyright assignments in the record are for collections created prior to 1989.

## B. *Potpourri's marketing of the disputed collections*

Potpourri has marketed the "Christina Collection" since December 1991, when it appeared on the front cover of Potpourri's "Everyday 1992" catalog and was featured in a six-page spread. In "Everyday 1993" "Christina" received four pages, and in "Everyday 1994" Potpourri displayed "Christina" on two pages. "Christina" uses a pink rose and lilac motif placed in different manners on the various items in the collection. On certain of the items plaintiff's first name appears, and her signature can be seen in each of the catalogs.

In December 1993 Potpourri began marketing the "Fancy Tulips" and "Della Robbia" collections. The "Fancy Tulips" collection, a stylized, flamboyant grouping of light

red tulips, appeared on four pages and the back cover of Potpourri's "1994 Midseason Catalog Supplement." Plaintiff's signature is again visible, this time on a mug on the back page of the catalog. Potpourri featured the "Della Robbia" collection, a heart-shaped gathering of evergreen, holly and fruit, on six pages in Potpourri's "Christmas 1994" catalog. The "Della Robbia" collection also provides the artistic inspiration for the back cover of that catalog.

## II

Plaintiff brought this action on January 21, 1993 by a complaint and an order to show cause seeking a temporary restraining order and a preliminary injunction. After oral argument the court denied the request for a temporary restraining order. Potpourri continues to market the "Fancy Tulips," "Della Robbia," and "Christina" collections. Potpourri has had items for the "Fancy Tulips" and "Della Robbia" collections manufactured that contain a copyright notice claiming it owns the copyright in these collections.

Plaintiff now seeks a preliminary injunction preventing Potpourri's (1) unauthorized claim of copyright in certain items in the "Fancy Tulips" and "Della Robbia" collections, (2) unauthorized use of the "Fancy Tulips" and "Della Robbia" designs without the copyright, and (3) unauthorized use the name "Christina" or "Christina Ladas."

## III

To obtain a preliminary injunction a party must show "the injunction is necessary to prevent irreparable harm" and either (1) the party is "likely to prevail on the merits of the underlying controversy," or (2) "the presence of sufficiently serious questions going to the merits as to make them a fair ground for litigation, together with a balance of hardships tipping decidedly toward the movant." *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.1985).

### A. *Alleged false claim of copyright*

■ The complaint's third claim alleges that Potpourri has placed a false claim of copyright on items in the "Fancy Tulips" and "Della Robbia" collections, in violation of 15 U.S.C. § 1125(a). That section, the Lanham Act's prohibition on false advertising, provides, in pertinent part,

(a)(1) Any person who, on ... any goods ..., uses in commerce any word, term, name, symbol, or device, ... or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake ...

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

At oral argument on the motion Potpourri's counsel said that if it were indeed claiming a copyright in the "Fancy Tulips" and "Della Robbia" collections that claim would be in error and Potpourri would take immediate steps to remedy the situation.

In a supplemental memorandum of law and in an affidavit of David L. Grimes, dated February 1, 1994, Potpourri said that it had mistakenly placed the notice "© 1993 Potpourri Press, Inc." on some items in the "Fancy Tulips" and "Della Robbia" collections. It has already shipped $22,145.15 worth of goods in these collections, but it has now halted shipment of those collections and informed its manufacturers to delete that notation from future products.

Potpourri proposes further to place nonremovable stickers over the copyright notice on all mislabeled items. It offers to use either blank stickers or stickers that say "© 1993 Christina Ladas." Potpourri also proposes to include in all shipments a note explaining that the purpose of the stickers is to correct an erroneous copyright notice. It says that "If the court desires, we will also state that the copyright in the artwork appearing on these products belongs to Ms. Christina Ladas."

The court concludes that the stickers should include the "© 1993 Christina Ladas" designation, and the notice should explain that plaintiff holds the copyright in those designs. Additionally, Potpourri should mail a notice and corrective stickers, with placement instructions, to retailers and others

who have already received shipments of the erroneously labeled items.

B. *Alleged copyright infringement*

■ The complaint's first claim is that Potpourri's continued manufacturing and showing of plaintiff's art in the "Fancy Tulips" and "Della Robbia" collections infringes plaintiff's copyright.

■ In copyright infringement actions plaintiffs ordinarily may show irreparable harm for the purpose of a preliminary injunction by demonstrating a prima facie case. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985). "A prima facie case of copyright infringement consists of proof that the plaintiff owns a valid copyright and the defendant has engaged in unauthorized copying." *Id.* The parties dispute only the latter half of that test.

The Copyright Act provides, in pertinent part, that a copyright owner "has the exclusive rights to ... distribute copies ... of the copyrighted work to the public by sale...." 17 U.S.C. § 106. Owners of copyrights may transfer all or some of their rights to others. For a transfer of copyright ownership to be valid it must be in writing. *Id.* at § 204(a). Transfers of copyright ownership include exclusive licenses, but not nonexclusive licenses. *Id.* at § 101.

The parties agree that plaintiff did not transfer any copyright ownership rights to Potpourri. But Potpourri claims a nonexclusive license to market the "Fancy Tulips" and "Della Robbia" collections because it paid plaintiff for the underlying artwork with the understanding that that artwork would be incorporated into collections and marketed over the ensuing years.

■ "A nonexclusive license may be granted orally, or may even be implied from conduct." 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.03[A] (1993). When parties do not specify the rights in a work of art created for payment, the court may find that their conduct has implicitly created a nonexclusive license for the use of the art. *See, e.g., Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990) (Kozinski, J.) (nonexclusive license to incorporate special effects footage into horror film), *cert. denied*, 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1086 (1991); *Gracen v. Bradford Exchange*, 698 F.2d 300, 303 (7th Cir.1983) (Posner, J.) (nonexclusive license to exhibit painting).

In an affirmation dated January 27, 1994 plaintiff states that the monthly installments of her $100,000 salary for 1992 were in exchange for "my consent to [Potpourri] that they could continue to market my artwork and receive sales from this artwork." This statement is wholly inconsistent with both the terms of the parties' written contract covering the years 1989 through 1991 and the letter memorializing their oral agreement for 1992, in which plaintiff acquiesced and according to which she proceeded to produce artwork.

Those papers make clear that what Potpourri paid for were supplies of artwork to be used in collections and on individual items. Plaintiff was obviously aware that it took a year to two years to bring a collection to market. It would make no sense for Potpourri to agree to make payments to plaintiff for her artwork before it could make money on sales of goods containing her artwork unless the right to sell those goods extended over a period of time when the goods were saleable. Indeed, it would be irrational to conclude that the parties agreed that Potpourri's right to sell those items would cease as soon as plaintiff stopped providing further and different artwork to Potpourri.

Finally, it is immaterial that plaintiff assigned the copyright in some of her artwork to Potpourri but did not assign the copyright in the "Fancy Tulips" and "Della Robbia" designs. Potpourri's lack of a copyright in the designs goes only to the scope of its rights. Thus, Potpourri could not complain if plaintiff chooses to do something else with her artwork. *Effects*, 908 F.2d at 559.

Potpourri apparently recognized that its rights were limited in a letter of May 12, 1993 from David Grimes to plaintiff. In that letter Mr. Grimes asks whether plaintiff wishes Potpourri to make arrangements to include her designs on gift wrap in exchange for a commission. If Potpourri had owned

the copyright to those designs, it would not have needed plaintiff's permission.

The course of dealing between the parties gave Potpourri a license to manufacture and distribute its giftware collections and items created with plaintiff's artwork.

Plaintiff has not made a showing of likelihood of success on the merits or even serious questions going to the merits. The court will therefore deny plaintiff's request for a preliminary injunction regarding the "Fancy Tulips" and "Della Robbia" collections.

## C. Trademark infringement

■ The complaint's second claim is for trademark infringement in violation of 15 U.S.C. § 1114(1). That section provides, in pertinent part,

> Any person who shall, without the consent of the registrant—
>
> (a) use in commerce any reproduction . . . . of a registered mark in connection with the sale . . . of any goods . . . in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

A prima facie case of trademark infringement requires "showing the use of one's trademark by another in a way that is likely to confuse consumers as to the source of the product." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir.1986).

On May 18, 1993 plaintiff registered her name, "Christina Ladas," as a trademark. She now contends that (1) Potpourri's continued marketing of the "Christina" collection and (2) the appearance of plaintiff's signature, "Christina," on items in the "Fancy Tulips" collection infringe on her mark.

Potpourri contests the existence of a likelihood of confusion between plaintiff's registered mark, "Christina Ladas," and its "Christina" collection and the "Christina" signature on items in the "Fancy Tulips" Collection. Furthermore Potpourri argues that the affirmative defense of acquiescence estops plaintiff from claiming trademark infringement.

■ Estoppel by acquiescence is an equitable defense. "A plaintiff cannot indicate at one time to defendant that defendant's acts are acceptable and then later sue defendant after it has acted in reliance on plaintiff's implied assurances." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 31.14[2] (3d ed. 1992). Acquiescence, either express or implied, can make issuance of an injunction unjust and estop a plaintiff from seeking that remedy. *Dwinell–Wright Co. v. White House Milk Co.*, 132 F.2d 822, 825 (2d Cir.1943) (Learned Hand, J.).

Potpourri began marketing the "Christina" collection under that name with plaintiff's express consent. According to Janet Pantuso's affidavit of January 25, 1994, plaintiff provided her picture to accompany a story about the naming and release of the "Christina" collection in Potpourri's "Everyday 1992" catalog. Plaintiff affirmatively assented to the use of her name in the collection's title. Plaintiff also chose to sign her first name on items she designed in various of Potpourri's collections.

In short plaintiff encouraged the use of her name and the appearance of her signature in items in Potpourri's line. Five months after she stopped making art for Potpourri she registered her name as a trademark. Now she seeks an injunction to prevent Potpourri from continuing to do what she once countenanced. The court need not perpetrate such an injustice.

The court is satisfied that plaintiff acquiesced in Potpourri's use of "Christina" in the collections for which plaintiff specifically produced the artwork.

Potpourri has demonstrated an extremely high likelihood of prevailing on the affirmative defense of acquiescence.

## IV

Plaintiff's request for an injunction preventing Potpourri from falsely claiming copyright ownership in the "Fancy Tulips" and "Della Robbia" collections is granted under the terms described above. Plaintiff's mo-

tion for a preliminary injunction is otherwise denied. Submit order on notice.

So Ordered.