**In re SUPERIOR TOY & MANUFACTURING CO., INC. a/k/a Carter Manufacturing Company, an Illinois Corporation, Debtor.**

**Catherine STEEGE, not individually but as Trustee for the Estate of Superior Toy and Manufacturing Co., Inc., Plaintiff,**

v.

**AT & T, Nolan & Company Graphics and Advertising, Inc., et al., Defendants.**

**Bankruptcy No. 90 B 04481.
Adv. No. 93 A 01222.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 23, 1995.

---

**830**

Catherine Steege, Jenner & Block, Chicago, IL, trustee for Superior Toy & Mfg. Co., Inc.

Sharon Swarsensky, Much Shelist Freed Denenberg & Ament, P.C., Chicago, IL, for Nolan & Co. Graphics and Advertising, Inc.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

The matters before the court are the amended motion of Catherine Steege, not individually but as trustee ("Trustee") for the estate of Superior Toy & Manufacturing Co., Inc. ("Superior" or "Debtor"), for summary judgment against Nolan & Company Graphics and Advertising, Inc. ("Nolan") and Nolan's motion for summary judgment against the Trustee. The Trustee seeks to recover $25,015.49 in payments made by Superior to Nolan that she alleges were preferential pursuant to § 547(b).[1] Nolan admits that substantially all of the payments took place during the preference period but asserts that each payment is not avoidable as a preference. For the reasons stated below, the court will grant the Trustee's motion for summary judgment and deny Nolan's.

### UNDISPUTED FACTS

Local Rule 402.M of the Bankruptcy Rules of the United States District Court and the United States Bankruptcy Court for the Northern District of Illinois requires the moving party to file a detailed statement of material facts as to which there are no genuine issue. The party opposing the motion is required by Local Rule 402.N to file a response to the movant's statement and set forth any facts which require denial of summary judgment. Each party has filed their respective 402.M and 402.N statements. From these statements, the following facts emerge as undisputed:

On March 9, 1990, an involuntary Chapter 7 bankruptcy petition was filed against Superior. Subsequently, Superior consented to an order for relief and converted the case to a Chapter 11 case. Then, on December 26, 1991, Superior converted its case to a Chapter 7 case. Nolan provided packaging design, finished art, and catalog design for Superior. In 1988, two calendar years preceding Superior's bankruptcy, Superior paid Nolan's invoices in an average of 50 days. In the ninety days before the petition date, Superior made two payments to Nolan covering numerous invoices. As some of Nolan's defenses depend on the individual check, a detail of what each check covered is necessary[2]:

1. *Check 1*—Check 27756, which cleared Superior's account on December 26, 1989, was for $14,796.49 and covered the following invoices:

| Invoice No. | Invoice Date | Amount | Days Outstanding[3] |
|---|---|---|---|
| 14269 | 10/04/89 | $ 2,775.50 | 83 |
| 14270 | 10/04/89 | 1,184.75 | 83 |
| 14276 | 10/05/89 | 161.00 | 82 |
| 14287 | 10/11/89 | 750.00 | 76 |
| 14288 | 10/11/89 | 750.00 | 76 |
| 14289 | 10/11/89 | 683.50 | 76 |
| 14300 | 10/18/89 | 946.25 | 69 |
| 14322 | 10/30/89 | 133.00 | 57 |
| 14349 | 11/09/89 | 386.75 | 47 |
| 5026 | 12/05/89 | 2,111.38 | 21 |
| 5027 | 12/05/89 | 1,708.25 | 21 |
| 5029 | 12/05/89 | 637.50 | 21 |
| 5033 | 12/06/89 | 76.23 | 20 |
| 5034 | 12/06/89 | 2,398.63 | 20 |
| 5037 | 12/06/89 | 93.75 | 20 |
| Total: | | $14,796.49 | |

each check lists the invoices that were covered by that check. As Nolan does not state the basis for its denial and the canceled checks provide independent evidence of the Trustee's statement, the court concludes that each check is payment for the invoices described on the face of such check.

---

**1.** Unless otherwise indicated, all section and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

**2.** Nolan admits the check number, date, and amount of the check. However, it denies that the checks were payments for the invoices listed in the Trustee's 402.M statement. An examination of the canceled checks, included as Exhibit A to the Trustee's affidavit contained in Exhibit 5 to her 402.M statement supporting her amended motion for summary judgment, indicates that

**3.** This column represents the time between the invoice date and date the check paying the invoice cleared the bank.

2. *Check 2*—Check 27781, which cleared Superior's account on January 9, 1990, was for $9,939.25 and covered the following invoices:

| Invoice No. | Invoice Date | Amount | Days Outstanding |
|---|---|---|---|
| 5060 | 12/12/89 | $115.00 | 28 |
| 5061 | 12/13/89 | 3,816.00 | 27 |
| 5062 | 12/13/89 | 543.75 | 27 |
| 5093 | 12/27/89 | 3,451.00 | 13 |
| 5094 | 12/27/89 | 690.00 | 13 |
| 5111 | 01/02/90 | 436.00 | 7 |
| 5112 | 01/02/90 | 887.50 | 7 |
| Total: | | $9,939.25 | |

■ In addition, on March 6, 1990, Superior paid Nolan $279.75 ("Check 3") for invoice no. 5264 dated February 21, 1990. This check did not clear the bank until three days after the involuntary petition was filed and therefore constitutes a postpetition transfer. It is not disputed that each of these were transfers of the Debtor's property which occurred while the Debtor was insolvent. Further, Nolan does not contend that it had a security interest in property of the Debtor. Next, during the 90 days prior to bankruptcy, the Debtor was not regularly paying its accounts payable. Finally, the Trustee had demanded that Nolan return the funds it received from these checks. However, Nolan maintains that it did not receive more than it would have in a Chapter 7 liquidation and also asserts several defenses that would preclude the Trustee from recovering any payments found to be preferential. Consequently, Nolan has not acceded to Superior's demand to return the funds.

### JURISDICTION

This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred here under Local District Rule 2.33. This court has subject matter jurisdiction and this is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

### SUMMARY JUDGMENT STANDARDS

■ Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (adopted by Fed.R.Bankr.Pro. 7056). The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick,* 916 F.2d 1140, 1147 (7th Cir.1990); *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374, 378 (7th Cir.1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmen's Federal Sav. & Loan Ass'n of Indianapolis.,* 806 F.2d 146, 149 (7th Cir.1986)).

■ The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. However, once the motion for summary judgment is made and supported as described above, Rule 56(e) provides that a party opposing the motion may not rest upon the mere allegations or denials in his pleading; the response of that party must set forth specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *Doe v. Cunningham,* 30 F.3d 879, 882 (7th Cir.1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994).

■ On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355; *Peerman v. Georgia–Pacific Corp.,* 35

F.3d 284, 286 (7th Cir.1994); *Cuddington v. Northern Ind. Public Serv. Co.,* 33 F.3d 813, 815 (7th Cir.1994). However, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Frey v. Fraser Yachts,* 29 F.3d 1153, 1156 (7th Cir. 1994).

▇▇▇ The Court should not "weigh the evidence." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510; *Illinois Bell Telephone Co. v. Haines and Company, Inc.,* 905 F.2d 1081, 1087 (7th Cir.1990), *vacated on other grounds,* 499 U.S. 944, 111 S.Ct. 1408, 113 L.Ed.2d 462 (1992). However, "[i]f evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–250, 106 S.Ct. at 2510–2519; *Griffin v. Air Line Pilots Ass'n, Int'l.,* 32 F.3d 1079, 1084 (7th Cir.1994). When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment should be granted. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

## CROSS MOTIONS FOR SUMMARY JUDGMENT

▇▇▇ When each side seeks summary judgment, that does not by itself preclude the existence of genuine issues of material fact preventing the granting of either motion. The court must rule on each motion separately in determining whether or not each judgment should be entered, in accordance with applicable principles. *CSFM Corp. v. Elbert & McKee Co.,* 870 F.Supp. 819, 830 (N.D.Ill.1994); *ITT Indus. Credit Co. v. D.S. America, Inc.,* 674 F.Supp. 1330, 1331 (N.D.Ill.1987) (Shadur, J.). See C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2720 (2d ed. 1983 & Supp.1987). Cross motions for summary judgment do not require the court to decide the case on those motions. The court can deny both motions if both parties fail to meet their burden. *Pitcher v. Principal Mutual Life Ins. Co.,* 870 F.Supp. 903, 906 (S.D.Ind.1994); *ITT,* 674 F.Supp. at 1331. See C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2720 (2d ed. 1983 & Supp.1987).

## DISCUSSION

Sections 547(a)–(c) provide, in relevant part, that:

(a) In this section—

\* \* \* \* \* \*

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

\* \* \* \* \* \*

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(c) the trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous ex-

change for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

\* \* \* \* \* \*

The thrust of Nolan's argument is that the Trustee cannot satisfy § 547(b)(5) because of the "special nature" of its product. Nolan asserts that the use of the copyright of another, without paying for such copyright, is a violation of § 106 of the Copyright Act of 1976, 17 U.S.C. §§ 101–1101 ("Copyright Act"). Nolan contends that since the Trustee sold products of the Debtor in packaging it designed, she was required to pay for the designs as an administrative expense in the event such designs had not been previously paid for. Alternatively, Nolan argues that all three checks are captured under the "new value" exception contained in § 547(c)(1) or, alternatively, that Check 1 falls under the "ordinary business exception" contained in § 547(c)(2). With respect to Check 3, the Trustee argues that this was a postpetition transfer of the Debtor's property in violation of the § 362 automatic stay. Nolan contends that there was no such violation as the check was written and sent prepetition. The Trustee asserts that it has satisfied each element of § 547(b) and that none of the exceptions of § 547(c) apply.

## I. § 547(b)(5)—Hypothetical Liquidation Analysis

Nolan offers a unique argument in its attempt to avoid being treated as the beneficiary of a preferential transfer. It states that the use of copyrighted material, pursuant to a non-exclusive license, without remunerating the author of the copyright, constitutes copyright infringement. In other words, Superior's postpetition use of Nolan's copyright, without paying Nolan, was prohibited. Further, since the use of such designs benefitted Superior's estate, Nolan is entitled to an administrative priority [4]. For both of these reasons, Nolan asserts that it did not receive more than it would have in a Chapter 7 liquidation. Aside from maintaining that there was no copyright that could have been infringed, the Trustee maintains that Nolan is simply an unsecured creditor who is not unlike the supplier of widgets. While a trustee may, postpetition, sell a product, made prepetition, which has a widget, the widget manufacturer does not receive an administrative expense priority simply because its widget was in such product. Similarly, the Trustee argues that Nolan is not entitled to an administrative expense priority. The issue facing the court is to determine whether Nolan had a copyright, and if it did, what affect such copyright would have on Nolan's rights in a bankruptcy proceeding.

First, the court turns to the governing statute, in this case the Copyright Act, to determine what Nolan's rights would be outside of bankruptcy if a user of its copyrighted material failed to compensate it for such use. Section 201(a) of the Copyright Act broadly defines the right to assert a copyright, stating in relevant part that a "copyright in a work protected under this title vests initially in the authors of the work." More succinctly stated, the author or creator of a work is entitled to claim a copyright. It is not disputed that Nolan supplied to Superior designs that it created. Under the expansive definition of a copyright, Nolan's designs qualify as a copyright.

Next, Nolan granted, orally, Superior a non-exclusive right to use its designs. While this is permissible under the case law and the leading treatise on copyright law, such a license does not operate to transfer ownership of the copyright. A "nonexclusive license may be granted orally, or may even be implied from conduct." *MacLean Associates Inc. v. Wm. M. Mercer–Meidinger–Hansen, Inc.*, 952 F.2d 769, 778–9 (3rd Cir.

---

4. *See,* 11 U.S.C. § 503.

1991), *citing* 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.03[A], at 10–37 (1991); *Effects Associates, Inc. v. Cohen,* 908 F.2d 555, 558 (9th Cir.1990), *cert. den. sub nom. Danforth v. Cohen,* 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1086 (1991); *Ladas v. Potpourri Press, Inc.,* 846 F.Supp. 221, 225 (E.D.N.Y.1994) (artwork design for marketing giftwork). However, all transfers of copyright ownership must be in writing, a non-exclusive license does not amount to a transfer of ownership. *See* 17 U.S.C. § 204; *MacLean,* 952 F.2d at 778–79 (computer software supplied by creator to a corporation); *Effects,* 908 F.2d at 556–57 (*See supra* ); 17 U.S.C. § 101 (expressly removing non-exclusive licenses from the definition of "transfer of ownership").

In *Effects,* the creator of special effects footage submitted this footage to a production company pursuant to an oral, non-exclusive license. The production company used the footage without paying the creator the full contract price. The creator brought an action against the production company, arguing that the production company had no right to use such footage unless it paid the full contract price. *Effects,* 908 F.2d at 556. The court rejected the creator's argument that the production company infringed on its copyright when it used the footage in movie, stating that the creator "impliedly granted nonexclusive licenses" to the production company to use the footage in its movie. *Id.* The court noted that while the creator could not maintain an action for copyright infringement, it may have other state court actions, such as breach of contract. *Id.* at 559.

■ In the instant case, Nolan argues that the payments to it were not preferential because Superior's use of its designs, pursuant to an non-exclusive license, without paying, would constitute copyright infringement. Nolan's argument has been rejected outside of bankruptcy and the court finds no reason that the result should differ in bankruptcy. The reasoning in *Effects* is persuasive and defeats Nolan's argument. Just as the cre-

ator in *Effects* did not have an action for copyright infringement for failure to pay, nor would Nolan have such an action if Superior had failed to pay Nolan for its designs or if it were forced to return such payments under § 547(b). Nolan, after supplying Superior with its designs, as it acknowledged in its brief, granted Superior a non-exclusive license to use such designs in its toy packaging and catalogs. Superior's use of such designs, without paying for them, for whatever reason, would not constitute copyright infringement as it had already been granted a non-exclusive license.[5] Accordingly, Nolan is like any ordinary trade creditor and Superior's payments to it, if not avoided, would allow Nolan to recover more that then it would in a Chapter 7 liquidation. While Nolan has other remedies, such as that of a general unsecured creditor, it would not be entitled to an administrative expense on the grounds of copyright infringement if it were forced to return payments deemed to be preferential.

■ The court now turns to Nolan's alternative argument, that it is entitled to an administrative expense because Superior used its designs postpetition. Section 503(b)(1)(A) allows payment for the actual, necessary costs of preserving the estate. Such priority is granted to a claim if the debt both arises from a transaction with the debtor-in-possession and is beneficial to the operation of the debtor-in-possession's business. *North American Printing Ink Co. v. Regensteiner Printing Co.,* 140 B.R. 474, 475 (N.D.Ill.1992) (prepetition supplier of ink denied administrative priority), *citing, In re Jartran,* 732 F.2d 584, 587 (7th Cir.1984). Further, to serve the purpose of priority, it is crucial that the debtor-in-possession induce the performance by the creditor. *North American Printing,* 140 B.R. at 475, citing, *Jartran,* 732 F.2d at 587.

■ As evidenced by *North American,* the postpetition use of materials delivered to a debtor prepetition does not entitle the supplier of such materials to an adminis-

---

**5.** The court notes that the mere delivery of a copy of a creation is only one factor that may be relied upon in determine that an implied license has been granted. *MacLean,* 952 F.2d at 769, *citing Effects,* 908 F.2d at 559 n. 6. However, since Nolan acknowledges the granting of non-exclusive license, it is not necessary for the court to examine this issue further.

trative priority. Nolan does not assert that Superior, while being operated by the debtor-in-possession or the Trustee, induced it to perform postpetition. There is no evidence to suggest that Nolan supplied any designs to Superior postpetition. Further, each of the catalogs that Superior used postpetition was printed and delivered prepetition. Therefore, Nolan's claim arose prepetition and would not constitute an administrative expense in the event the court finds that Nolan was the beneficiary of a preferential payment.

In this case, it is clear that the unsecured creditors will not receive full payment from Superior's estate. Therefore, barring the applicability of any of the exceptions set forth in § 547(c), as the Trustee aptly states, unsecured creditors, such as Nolan, that received payment during the preference period, as a matter of law, have received more than they would have had they not been paid and payment had been made under Chapter 7 of the Code. *Palmer Clay Products v. Brown*, 297 U.S. 227, 229, 56 S.Ct. 450, 451, 80 L.Ed. 655 (1936); *In re Alper–Richman Furs, Ltd.*, 147 B.R. 140, 154 (Bankr.N.D.Ill.1992). Unless the payments to Nolan fall under any of the § 547(c) exceptions, Nolan shall be required to remit to the Trustee each payment found to be preferential.

II. *Section 547(c)(1)—The "New Value" Exception*

▌ It is Nolan's burden to establish, by a preponderance of the evidence, that it extended new value to Superior; that both Nolan and Superior intended the new value and reciprocal transfer to be contemporaneous; and that exchange was in fact contemporaneous. *See* § 547(c)(1), (g); *In re Grand Chevrolet, Inc.*, 25 F.3d 728, 733–34 (9th Cir. 1994). Nolan contends that Superior's payment of its invoices were part of a substantially contemporaneous exchange. The checks paying these invoices cleared the bank between seven and eighty three days of the invoice date. Eighty-three days does not seem to be contemporaneous. However, Nolan argues that the exchange was contemporaneous because it had a right to revoke the license in the event that Superior did not

pay. In other words, Superior did not have the right to use Nolan's design until they paid for it. Upon payment, Nolan gave up its right to revoke the license. While the court agrees that, absent payment for its designs, Nolan may have had the prospective right to preclude Superior from using its designs. But, any use of the designs, prior to revocation, was within Superior's rights pursuant to the non-exclusive license granted to it at the time Nolan submitted its design. (*See* discussion *infra*). Consequently, Nolan did not grant any rights upon Superior's payment of the invoices in question. In any event, the ability to revoke a non-exclusive license, similar to the right to forebear, does not fall into the definition of new value in § 547(a)(2). *See* § 547(a)(2); *In re McLean Industries, Inc.*, 162 B.R. 410, 423–24 (S.D.N.Y.1993) (forbearance in pursuing a legal right is not new value), *rev'd on other grounds*, 30 F.3d 385 (2nd Cir.1994), *cert. den.* —— U.S. ——, 115 S.Ct. 934, 130 L.Ed.2d 880 (1995); *In re Old Electralloy Corp.*, 164 B.R. 501, 505 (Bankr.W.D.1994). Contrary to Nolan's arguments, there was no vesting at time of payment. Absent a possible revocation, it had already given up its rights to the designs. Since Superior already had a right to use Nolan's designs, there was not a contemporaneous exchange upon payment of the invoices.

▌ Before considering Nolan's next defense, the court is compelled to address Nolan's argument that the credit terms on its invoices were meaningless. Nolan's invoices are the only evidence of the terms of the agreement between Nolan and Superior. A party is bound by the terms of its own contract. *See Jordan v. John Hancock Mutual Life Insurance Co.*, 222 F.2d 210, 214 (7th Cir.1955). Nolan's invoice indicated that payment was due within thirty (30) days. Further, the invoices did not contain any language prohibiting Superior from using their designs until payment was made. Both parties agree that Superior paid Nolan's invoices on an average of fifty (50) days. Nolan's attempt to cascade away the terms of their own invoices must be rejected. Nolan's invoices provide further evidence that the parties did not intend their transactions to be a contemporaneous. *See In re A.J. Lane &*

*Co., Inc.,* 164 B.R. 409, 419 (Bankr.D.Mass. 1994) (existence of payment terms demonstrates a lack of intent for a contemporaneous exchange).

### III. Section 547(c)(2)—Ordinary Course of Business

■ In order for a creditor to prevail using the ordinary course of business exception to § 547(b), the creditor must show that the debt had been incurred in the ordinary course of business of both the debtor and the creditor; that the payment too, had been made and received in the ordinary course of their businesses; that the payment was made according to ordinary business terms. *Matter of Tolona Pizza Products Corp.,* 3 F.3d 1029, 1031 (7th Cir.1993). Ordinary business terms refers to a range of payment terms encompassing the practices of firms similar to that creditor. *Id.* at 1033. It is therefore necessary for a creditor to present some evidence establishing the range of acceptable practices within the industry. *In re Midway Airlines,* 1995 WL 331053 (N.D.Ill.1995) (unpublished opinion).

■ Nolan argues that Check 1, as defined above, was a check paid in the ordinary course of business. Superior agrees that this check was payment of a debt incurred in the ordinary course of business. However, it argues that Check 1 was not a transfer made in either the ordinary course of Superior's business or according to ordinary business terms. The court agrees. The invoices paid by this check were, on average, 51 days old. At first blush, this would seem to make the payment ordinary. In 1988, Superior paid Nolan's invoices in an average of 50 days. *See* Affidavit of Harry Piontowski ¶ 6 (controller of Nolan). Further, Nolan submitted an affidavit of a person who has published a study on accounts receivable collections for smaller advertising agencies, design studios, and public relations firms concluding that it takes, on average, 51.7 days for entities in this industry to collect their receivables. *See* Affidavit of Anthony P. Mikes. Based on these affidavits, Nolan concludes that Check

1 constitutes a payment made in the ordinary course of business.

The court is unsure of what to make of Nolan's defense. On one hand it argues that Superior's payments are contemporaneous exchanges because some invoices were paid so close to the invoice date and on the other hand they argue that receivables are owing for an average of 52 days. But, upon closer examination of the invoices paid by Check 1, it becomes clear that there was no ordinary course of business with respect to Superior's payments in the last quarter of 1989. It is pure happenstance that the invoices paid by Check 1 averaged 51 days. Invoices covered by this check included six invoices over 75 days old and six invoices under 25. In addition, after examining Checks 2 and 3, it appears that Nolan collected its invoices in less than thirty days, significantly less than the time it asserts is average for the industry.

There is no evidence indicating that Nolan changed its credit policies, requiring invoices to be paid in a more expedient manner. Instead, this appears to be a classic preference scenario. Superior, or the Contentional Bank, N.A[6], paid Nolan's invoices instead of those of its other creditors during the preference period. According to the Trustee, the fact that Continental was ordering the payment of Superior's bills, on its own, is sufficient to defeat Nolan's ordinary course of business defense. While this may be so, it is not necessary for the court to address this issue. The payment of Nolan's invoices were clearly not in the ordinary course of Superior's business. As a result, Nolan's § 547(c)(2) defense must be rejected.

### IV. The Postpetition Transfer

■ Nolan's defense to Check 3 is that it cannot be a preference under § 547 since the check was honored postpetition. It is well established that for the purpose of § 547, the date the check is honored is considered the date of transfer. *Barnhill v. Johnson,* 503 U.S. 393, 399–400, 112 S.Ct. 1386, 1390, 118 L.Ed.2d 39 (1992). The

---

**6.** Superior was in default under its loans to Continental in the fall of 1989. On December 1, 1989, Continental took control of all of Superi-

or's cash and directed which creditors Superior was to pay.

Trustee asserts that Check 3 was a postpetition transfer in violation of the automatic stay imposed by § 362. However, under § 362(b)(11) [7], unless the bank honoring the check had notice of Superior's bankruptcy, it did not violate the automatic stay by honoring the check upon presentment. *In re Figueira*, 163 B.R. 192, 195 (Bankr.D.Kan. 1993).

■ While neither side addresses this issue, with respect to Check 3, the issue is whether the Trustee can recover this check under § 549. This section provides in relevant part that:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

It can not be disputed that the transfer of property of Superior's estate was allowed pursuant to § 542(c) [8]. But, § 542(c) only protects the financial institution honoring the check and not the recipient of the funds. *In re Mills*, 167 B.R. 663, 664–65 (Bankr. D.Kan.), *aff'd* 176 B.R. 924, 928 (D.Kan.1994). Section 362(b)(11) does not authorize any transfer of estate property, it merely permits the presenter's performance of an act that would otherwise be a stay violation. *Mills*, 167 B.R. at 664–5, *aff'd* 176 B.R. at 928. The purpose of this exception to the automatic stay is to protect the financial institutions without notice of a bankruptcy and facilitate commerce. *Mills*, 167 B.R. at 664.

Check 3 was clearly a preferential payment under § 549. Nolan's receipt of the funds provided by Superior's check does not fall under the turnover exception in § 542(c). If this were not the result, the court would be creating a safe harbor for those checks written prepetition and presented postpetition. *See Mills*, 176 B.R. at 927. There is nothing in the Bankruptcy Code or the legislative history to suggest that Congress intended to create such safe harbor nor are there policy reasons for creating this exception for what would otherwise be a preferential payment. *Id.* Accordingly, the Trustee is entitled to recover Check 3 from Nolan as a preferential payment under § 549 of the Bankruptcy Code.

## CONCLUSION

The Trustee's motion for summary judgment shall be granted and Nolan's motion for summary judgment shall be denied by separate order. Each check received by Nolan during the preference period and thereafter was a preferential payment that the Trustee is entitled to avoid. The Trustee shall be entitled to prejudgment interest from the date of demand at the rate specified by 28 U.S.C. § 1961.

7. This section provides in relevant part that:

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—

 * * * * * *

(11) under subsection (a) of this section, of the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument.

8. This section provides that:

(c) Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.